UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

HEATHER P.,[1]

Plaintiff,

Case # 23-CV-6380-FPG

v.

DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

Plaintiff Heather P. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied their[2] application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 4, 7. For the reasons that follow, Plaintiff's Motion for Judgment on the Pleadings is DENIED, the Commissioner's Motion for Judgment on the Pleadings is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In December 2016, Plaintiff applied for DIB with the Social Security Administration ("the SSA"). Tr.[3] 79, 177. Plaintiff alleged disability since August 2012 due to several mental and

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] Although the ALJ referred to Plaintiff using feminine pronouns, Plaintiff presently uses the gender-neutral pronouns "they/them." Tr. 2725. The Court will do the same here.

[3] "Tr." refers to the administrative record in this matter. ECF No. 5.

physical impairments. Tr. 79. On May 2019, Administrative Law Judge Jennifer Gale Smith ("the ALJ") issued a decision finding that Plaintiff was not disabled between August 2012 and December 31, 2017, the date last insured. Tr. 12-25. In April 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. In January 2022, this Court remanded for further administrative proceedings. Tr. 1464-72. In March 2022, the Appeals Council remanded to the ALJ. Tr. 1378-1431. In March 2023, the ALJ issued a decision again finding that Plaintiff was not disabled. Tr. 1348-1377. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform

alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from their alleged onset date in August 2012 through December 2017, their date last insured. Tr. 1360. At step two, the ALJ found that Plaintiff had severe impairments of obesity, scoliosis, asthma, lumbar and thoracic strain, paresthetica meralgia right thigh, right shoulder tendonitis, post-traumatic brain syndrome, adjustment disorder, anxiety disorder, depressive disorder, personality disorder, PTSD, and gender binary disorder. Tr. 1360. At step three, the ALJ found that these impairments did not meet or medically equal any Listings impairment. Tr. 1353-58.

Next, the ALJ determined that Plaintiff had the RFC to perform sedentary work with non-exertional, environmental, and mental limitations. Tr. 1358-1368. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work through the date last insured. Tr. 1368. At step five, the ALJ found that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. 1369-70. Accordingly, the ALJ found that Plaintiff was not disabled during the period from August 2012 to December 2017. Tr. 1370.

### II. Analysis

Plaintiff asserts that remand is warranted because the ALJ, for several reasons, traversed the treating physician rule. The Court addresses each ground in turn.

**a. Treating Physician Rule**

For claims filed before March 27, 2017, an ALJ must give a treating physician's opinion regarding the nature and severity of a claimant's impairments controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) ("The SSA recognizes a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant."). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (noting the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, the ALJ must "explicitly consider" "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Guerra v. Saul*, 778 F. App'x 75, 76-77, 76 n.2 (2d Cir. 2019) (summary order) (brackets in original). Failure to do so constitutes "procedural error warranting remand unless a searching review of the record assures the reviewing court that the substance of the treating physician rule is not traversed." *Id.* at 77. "[O]pinions of treating physicians are binding in the absence of substantial evidence to the contrary even if the treating physician[s'] evaluations [were] made after the last date on which the claimant met the special earnings requirement." *McAllister v. Colvin*, 205 F. Supp. 3d 314, 332 (E.D.N.Y. 2016) (internal quotation marks omitted, alterations in original); *see also Messina v. Comm'r of Soc. Sec.*

*Admin.*, 747 F. App'x 11, 15-16 (2d Cir. 2018) (summary order) ("[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence." (alteration in original)).

**b. Plaintiff's Arguments**

Plaintiffs argues that the ALJ traversed the treating physician rule. ECF No. 4-1 at 19-30. On June 26, 2018, Plaintiff was seen by Dr. Deborah Marshall, who reported that Plaintiff exhibited depressed mood, anxiety, suspiciousness, panic attacks more than once a week, chronic sleep impairment, mild memory loss and impairment of short- and long-term memory, difficulty understanding complex commands, disturbances of motivation and mood, difficulty establishing relationships or adapting to stressful circumstances, neglect of personal appearance and hygiene, and intermittent inability to perform activities of daily life. Tr. 672-73. Dr. Marshall diagnosed Plaintiff with PTSD, panic disorder, and major depressive disorder, Tr. 670, and opined that if Plaintiff were a candidate for competitive work their PTSD symptoms would put them "at risk for at least moderate if not severe impairments" in "capacity to maintain appropriate behavioral and emotional stability in work relationships" and also "capacity to carry out work related activities in a reliable and consistent manner," Tr. 673.

On April 2, 2019, Plaintiff was seen by Dr. Alison Sastry, who reported that Plaintiff was seriously limited in their ability to maintain attention for two-hour segments or complete a normal workday without interruptions from psychologically-based symptoms. Tr. 1338. Dr. Sastry further reported that Plaintiff had limited but satisfactory ability to carry out short and simple instructions; make simple work-related decisions; be aware of normal hazards; understand, remember, and carry out detailed instructions; interact with the general public; and maintain

socially appropriate behavior. Tr. 1338-39. In response to whether Plaintiff could deal with normal work stress, Dr. Sastry noted "Cannot assess." Tr. 1338. Dr. Sastry opined that Plaintiff was "not at this time" able to engage in full-time competitive employment as of May 2018 and her "very approximate" estimate was that Plaintiff would be absent from work at least three days per month. Tr. 1340. In June 2022, Dr. Sastry opined that although part-time employment was possible with an effective medication regimen, full-time employment "would be difficult" for Plaintiff. Tr. 1951. Dr. Sastry further reported that Plaintiff was precluded from maintaining attention for two-hour segments for 11 to 20 percent of the day. Tr. 1953. Moreover, Dr. Sastry opined that Plaintiff's impairment precluded performance understanding, remembering, and carrying out very short and simple instructions and making simple work-related decisions for less than 10 percent of the day and that Plaintiff was moderately limited in interacting with others and maintaining concentration, persistence, or pace. Tr. 1953-56. Dr. Sastry again noted that she could not assess if Plaintiff was able to deal with normal workplace stress, and also stated that she could not assess how many days a month Plaintiff would be absent from work. Tr. 1954.

The ALJ afforded the opinions of Drs. Marshall and Sastry "partial evidentiary weight," accepting their opinions as to the extent to which Plaintiff was "restricted to simple work with simple stress, occasional changes in routine work setting, no productivity requirement, and occasional social interaction," but rejecting the functional limitations identified. Tr. 1362. Specifically, the ALJ found that the opinions were "an overestimate of the claimant's functional limitations" and were contradicted by normal mental status examinations in the record. Tr. 1361-62. Plaintiff argues that, when giving these opinions only partial weight, the ALJ traversed the treating physician rule because (1) the ALJ elevated her own personal view over the treating physician's opinions and set her own expertise against that of trained medical professionals; (2)

the ALJ overlooked or ignored medical evidence in the record contrary to her conclusion; and (3) the ALJ failed to recontact Drs. Marshall and Sastry for additional information. *See* ECF No. 4-1.

**i. Elevated Personal View**

"[A]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). An ALJ therefore cannot elevate their personal view over the opinions of the treating physicians or set their expertise against that of the treating physicians. *See Allen B. v. Comm'r of Soc. Sec.*, No. 20-CV-38, 2021 WL 2042429, at *5 (W.D.N.Y. May 21, 2021) (finding that ALJ erred by elevating own personal view and "improperly undermin[ing]" the treating physicians); *see also Smith v. Colvin*, 218 F. Supp. 3d 168, 174 (E.D.N.Y. 2016) (finding the ALJ erred by elevating his personal view of the medical evidence over the treating physician's opinion).

Without elaboration, Plaintiff argues only that the ALJ's conclusion that Drs. Marshall and Sastry overestimated Plaintiff's functional limitations was "a clear instance of the ALJ elevating her own personal view of the medical evidence over the treating physicians' opinions and setting her own expertise against that of trained medical professionals." ECF No. 4-1 at 23-24. This argument stands alone from the others Plaintiff makes, with no indication as to what specific oversight by the ALJ prompted it. In making this argument, Plaintiff fails to "point to any specific testimony or evidence" the ALJ "overlooked or unjustly weighed." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 686 (S.D.N.Y. 2011). Conclusory arguments of this nature do not suffice to defeat the Commissioner's motion for judgment on the pleadings. *See Reyes v. Barnhart*, No. 01-CV.-4059, 2004 WL 439495, *3 (S.D.N.Y. Mar. 9, 2004) ("[C]onclusory allegations of Plaintiff's

complaint are insufficient to defeat the Commissioner's motion for judgment on the pleadings."). Accordingly, remand is not warranted on this ground.

**ii. Overlooked Medical Evidence**

Plaintiff argues that the ALJ traversed the treating physician rule when she failed to discuss findings that found positive mental status indicators, such as depressed and anxious mood, suicidal ideations, speech difficulties, or circumstantial and tangential thought process. ECF No. 4-1 at 24-25; Tr. 323-28, 337-38. In addition, Plaintiff argues that the ALJ ignored records noting Plaintiff's cycles of depression, anxiety, and PTSD symptoms, ECF No. 4-1 at 25, and that the ALJ failed to account for Dr. Sastry's opined stress limitations in the RFC, *id*. at 27-30.

Generally, an ALJ's decision need not be explicit in every detail or exhaustive in its discussion of the evidence. All that is required is that an ALJ's analysis "afford[] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). Remand may be warranted where a court is "unable to fathom the ALJ's rationale in relation to [the] evidence in the record." *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982). Otherwise, so long as the "the evidence of record permits [the court] to glean the rationale of an ALJ's decision," an ALJ is not required to "mention[] every item of testimony presented to him or [] explain[] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983).

Here, the Court is able to glean the rationale of the ALJ's decision, regardless of the details Plaintiff claims were overlooked. In discussing the medical evidence, the ALJ found that the functional limitations identified by Drs. Marshall and Sastry were contradicted by mental status examinations in the record, which reflect that Plaintiff's mood and affect were normal and their

memory, judgment, and cognitive functions were intact.[4] Tr. 1361; *see e.g.* Tr. 324-28, 381, 883, 1790. Although the Court notes that some of these positive mental status indicators were derived from counseling records rather than from treating physicians, the Court further notes that the treating physicians were not conclusive in their findings. In her April 2019 opinion, Dr. Sastry could only offer a "very approximate" estimate as to how often Plaintiff would be unable to work per month. Tr. 1340. In her June 2022 opinion, Dr. Sastry was unable to assess 14 of the 19 mental abilities and aptitudes needed to do unskilled work, Tr. 1953-54, and was further unable to determine how often Plaintiff would be absent from work, Tr. 1954-55. As to Plaintiff's cycles of depression, anxiety, and PTSD symptoms, although the ALJ did not mention this factor with regards to Drs. Marshall and Sastry, she did discuss it elsewhere in the decision. *See* Tr. 1359. Specifically, the ALJ acknowledged the medical evidence showing that Plaintiff had "good days and bad days" while discussing the weight given to another medical expert. *Id*. The Court further notes that Dr. Sastry was unable to opine on Plaintiff's ability to deal with normal workplace stress. Tr. 1338, 1954.

As the ALJ's findings were reasonably supported by the record, they "must be given conclusive effect" even if "the administrative record may also adequately support contrary findings on particular issues." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). The ALJ did not ignore or cherry-pick evidence, but rather acknowledged and resolved conflicts in the record to arrive at reasonable factual conclusions. The mere fact that Plaintiff can identify other evidence to support a different conclusion does not entitle them to relief. *Emery S. v. Comm'r of Soc. Sec.*, No. 20-

---

[4] The ALJ further noted that Dr. Sastry did not begin treating Plaintiff until May 2018, which was after the date last insured. Tr. 1362. This fact alone would not suffice to reject Dr. Sastry's opinion. *See Charles M. v. Berryhill*, No. 18-CV-92, 2019 WL 3886901, at *9 (D. Vt. Aug. 19, 2019) ("While it is true that [the physician] completed the assessment about nine months after the date last insured, this fact alone is not a sufficient reason to reject his opinion."). In light of the other reasons for affording partial weight given by the ALJ, however, the ALJ merely citing to the postdated nature of Dr. Sastry's opinion does not warrant remand.

CV-662, 2021 WL 2592363, at *4 (W.D.N.Y. June 24, 2021). Because this is not a case "in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, there is no need to remand this case to the ALJ for clarification." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010) (summary order) (internal quotations and citations omitted).

**iii. Failure To Recontact**

Finally, Plaintiff argues that the ALJ was obliged to recontact Drs. Marshall and Sastry to request additional information as to why they reached their opinions regarding Plaintiff. *Id.* at 25-27. "The law is clear beyond cavil that where, as here, a treating physician's opinion is found by the ALJ to be vague or unclear, it is incumbent on the ALJ to recontact the treating physician for clarification of his or her opinion." *Heidrick v. Berryhill*, 312 F. Supp. 3d 371, 374 (W.D.N.Y. 2018) (internal quotation marks omitted); *see also Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010) ("If the ALJ is not able to fully credit a treating physician's opinion because the medical records from the physician are incomplete or do not contain detailed support for the opinions expressed, the ALJ is obligated to request such missing information from the physician.").

Here, however, the ALJ did not find that Drs. Marshall and Sastry's opinions were vague, unclear, or missing cited information, but rather that they contradicted medical evidence in the record and were unable to assess important mental status indicators. Tr. 1361-62. Accordingly, the ALJ was not obliged to recontact the treating physicians and remand on this ground is not warranted. *See Donald A. v. Saul*, No. 19-CV-1146, 2021 WL 672043, at *7 (W.D.N.Y. Feb. 22, 2021) (declining to remand for failure to recontact where the ALJ "did not reject the opinions for being vague or unclear" but rather because the opinions failed to support their conclusion).

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 4) is DENIED, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is GRANTED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: September 30, 2024
Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York